

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
*****************************
EDWARD M. TAYLOR, and         *
LESLIE TAYLOR,                *
                              *
              Plaintiffs,     *
                              *    CIVIL ACTION NUMBER
         -- vs. --            *
                              *    03 CV 12600 WGY
NEXL SPORTS PRODUCTS,         *
also known as NEXL SPORTS HELMETS, *
                              *
              Defendant.      *
*****************************
```

## AMENDED COMPLAINT

## DEMAND FOR TRIAL BY JURY

### THE PARTIES

1.) The Plaintiff, EDWARD M. TAYLOR, is an adult individual, who, at all times relevant, was residing at 118 Seaver Street, East Taunton, Bristol County, Massachusetts.

2.) The Plaintiff, LESLIE TAYLOR, is an adult individual, who, at all time relevant, was residing at 118 Seaver Street, East Taunton, Bristol County, Massachusetts.

3.) The Defendant, NexL Sports Products, also known as NexL Sports Helmets, holds itself to be a duly organized and existing corporation, with a principal place of business at 121 Aviation Way, in Watsonville, California 95076. The Defendant is the manufacturer, designer, maker, and distributor of NexL Sports Helmets, for use when riding a motorcycle.

### JURISDICTION

4.) This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332.

### FACTUAL AND LEGAL ALLEGATIONS

LAW OFFICES OF
JOSEPH S. PROVANZANO

Page #2
Wednesday, January 07, 2004

5. )   On or about October 24, 2001, Carol A. LaBonte was the operator of a motor vehicle, then owned by Paul D. LaBonte, which she was operating upon Route 140, Northbound, in Shrewsbury, Worcester County, Massachusetts. The Plaintiff, EDWARD TAYLOR, was lawfully operating his motorcycle on Route 140, Southbound, in Shrewsbury, Worcester County, Massachusetts. The Plaintiff, EDWARD TAYLOR, had the right of way entering the intersection referenced hereinabove, entering first and attempting to proceed straight through same, when Carol A. LaBonte negligently proceeded to attempt to take a left hand turn, directly in front of, and in the path of the Plaintiff's, EDWARD TAYLOR's, on coming motorcycle. As a result of the negligent actions of Carol A. LaBonte, the Plaintiff's, EDWARD TAYLOR's, motorcycle and the automobile collided, being Paul LaBonte's motor vehicle, at which time, the Plaintiff, EDWARD TAYLOR, sustained severe personal injury, property damage, and emotional damages, all of which continue into the future. The Plaintiff sustained injuries to his face, head, neck and person, as a result of the motorcycle helmet, then being worn properly by the Plaintiff, coming off as a result of the impact between the automobile and the motorcycle.

6. )   As a result of the negligence of the Defendant, the Plaintiff, EDWARD TAYLOR, sustained serious bodily injuries including, but not limited to, a fractured knee requiring surgery, head injuries, cuts, contusions, abrasions, headaches, neck and back injuries, permanent scarring and disfigurement, lost wages and earning capacity, substitute and alternative transportation costs, incurred medical expenses, loss of consortium, all of which continue into the future.

7. )   The Plaintiff, EDWARD TAYLOR, sustained severe personal injuries, and he incurred medical expenses for the treatment of said injuries, which invoices and treatment were fair, reasonable and necessary, and continue into the future, all as a result of the negligence and carelessness of the Defendant.

**LAW OFFICES OF
JOSEPH S. PROVANZANO**

8.) As a result of the negligence of the Defendant, both Plaintiffs suffered a Loss of Consortium.

9.) The Plaintiff, EDWARD TAYLOR, suffered permanent injuries, pain and suffering, and continues to so suffer into the future.

10.) As a result of the Defendant's negligence, the Plaintiff, EDWARD TAYLOR, was diagnosed at the hospital and/or by his medical providers with, at least, a Fractured Right Knee; Torn PCL Ligament of Right Knee; Torn ACL ligament of Right Knee; Head Injuries/Headaches; Cuts; Abrasions; Permanent Hair Loss; Permanent Scaring on Right Leg and Ankle; Lower Torso Strain; Lumbar Sprain/Strain; Cervical Sprain/Strain; Contusions, Abrasions; Neck Pain; Loss of Feeling from Right Hip and Right Leg; and remains in pain, with a Leg Support to be worn indefinitely into the future.

11.) As a result of the negligence of the Defendant, the Plaintiff, EDWARD TAYLOR, has incurred medical expenses, which are fair, reasonable and wise under the circumstances, being, at least, from the Umass Memorial Medical Center in the sum of $ 6,401.00; Brockton Regional MRI Center of $ 9,900.00; Bridgewater Park Medical Associates of $ 2,100.00; Umass EMS of $ 659.00, and which total $ 19,060.00. Medical expenses will be incurred in the future.

12.) As a result of the negligence of the Defendant, the Plaintiff, EDWARD TAYLOR, has incurred out of pocket expenses, being, at least, estimated Lost Wages of $ 50,000.00; Pain Medications estimated of $ 115.61; Property Damage of approximately $ 4,610.03; Personal Property in the sum of $ 1,496.25; Towing and Storage of approximately $ 480.00; Substitute Transportation of $ 1,592.71, for a total of $ 31,374.60.

13.) As a result of the negligence of the Defendant, the Plaintiff, EDWARD TAYLOR, has suffered emotional damages and pain and suffering, both of which continue into the future.

along with a Loss of Consortium, being, at least, an estimated Total Disability of approximately sixteen [16] weeks or more; an estimated Partial Disability from approximately February of 2002 to the present and continuing; and with a Permanent and Residual Disability for the remainder of the Plaintiff's, EDWARD TAYLOR's, Life, which has an Expectancy of approximately twenty-two [22] years.

14.) As a result of the negligence of the Defendant, the Plaintiff, LESLIE TAYLOR, sustained a Loss of Consortium from the date of loss and continuing.

15.) These actions stated herein constitute unfair or deceptive acts or practices, within the meaning of Massachusetts General Laws, Chapter 93A. The actions of the Defendant, as described herein, were performed willingly and knowingly, and the Plaintiffs are entitled to double and/or treble damages, interest, costs and attorney fees. The Defendant, after Written Demand has made no reasonable offer of settlement.

16.) The Plaintiffs issued Demand Letter or Letters, pursuant to the provisions of Massachusetts General Laws, Chapter 93A, a copy of which is attached hereto and incorporated herein by reference. The actions of the Defendant, as stated herein, constitute unfair or deceptive acts or practices, as envisioned and as defined within Massachusetts General Laws, Chapter 93A. In acting as stated herein above, the Defendant has failed to comply with the mandates of Massachusetts General Laws, Chapter 93A, and violations thereof are viewed as unfair or deceptive acts or practices, all of which entitles the Plaintiffs to multiple damages, double or triple damages, plus costs and reasonable attorneys fees.

17.) The Defendant refused and/or neglected its legal obligations and under Massachusetts General Laws, Chapter 93A, has failed to make a timely offer of settlement.

Page #5
Wednesday, January 07, 2004

18.) The Plaintiffs incorporate by reference, as if stated here in full the Demand Letter attached hereto and the original <u>Complaint</u>, as filed in this action and states that, within a reasonable period of time, the Plaintiffs gave due notice to the Defendant of Defendant's breach of warranty as herein alleged.

19.) The Defendant, NexL Sports Products, also known as NexL Sports Helmets, holds itself to be a duly organized and existing corporation, with a principal place of business at 121 Aviation Way, in Watsonville, California 95076. The Defendant is the manufacturer, designer, maker, and distributor of NexL Sports Helmets, for use when riding a motorcycle.

20.) The Plaintiff, while living and located within the Commonwealth of Massachusetts, purchased a certain "Beanie DOT Motorcycle Helmet", hereinafter "Helmet, directly from the Defendant, who shipped and delivered said Helmet to the Plaintiff in Massachusetts.

21.) The Defendant sells Helmets and other products in the Commonwealth of Massachusetts, among other states.

22.) At all times herein mentioned, the Defendant was the designer and manufacturer of the Helmet, a product for use by ultimate consumers for wearing when operating a motorcycle and which Helmet is alleged to be in compliance with all Federal Safety Standards and/or Requirements for the safe usage of the "Helmet".

23.) That prior to October 24, 2001, the Plaintiff purchased from the Defendant the Helmet manufactured by the Defendant for resale to the ultimate consumers. The Helmet so purchased by the Plaintiff was in its original carton and the same was firmly sealed as it had been sealed by Defendant before delivery to the Plaintiff, who never altered or changed the Helmet in any way.

**LAW OFFICES OF**
**JOSEPH S. PROVANZANO**

24.) On October 24, 2001, the Helmet was in use by the Plaintiff when the motor vehicle accident referenced took place and the safety features, being the strapping mechanisms of the Helmet failed, causing the Helmet to leave the head of the Plaintiff, thus allowing impact directly to the head of the Plaintiff, who suffered damage and injury, as a result thereof.

25.) Said damages and injuries to the Plaintiff were caused by the negligence of the Defendant, which negligence consisted, among other things, of the following:

(a.) Failure to warn by statement on the Helmet, in the instruction booklet, or otherwise, of the danger to be encountered if the Helmet's safety features were to fail;

(b.) Failure to warn that the Helmet was not properly tested and that the Department of Transportation Sticker, herein the "DOT" Sticker, placed thereupon by the Defendant was, in fact, incorrectly and improperly placed thereupon, as the Helmet would fail and did fail to meet the Federal Safety Standards indicated as being passed by the DOT Sticker being placed thereupon;

(c.) Failure to warn that the Helmet had failed to pass the testing of the Department of Transportation and/or Federal Government and that the Helmet should have been recalled and not used when riding a motorcycle, and that by wearing it and being involved in a motor vehicle accident, the Plaintiff may suffer from death or permanent and disabling injury should the Helmet's safety features fail to perform in the manner and the method as represented, warranted and stated; and

(d.) Failure to design the Helmet so that it would meet the minimum standards as called for by the Department of Transpiration, the Federal Government, and/or the Commonwealth of Massachusetts, all as stated in Safety Standard Known as Safety Standard 218; failure to design the Helmet in such a manner as to avoid or minimize the extreme risks to users of

the helmet should a motor vehicle accident take place; and by falsely placing a DOT Sticker upon said Helmet so as to falsely warrant and represent that all relevant testing had been conducted upon the Helmet successfully, when, in fact, the Helmet would not pass said testing.

26.) The Plaintiff does not know, and has no way of knowing, what caused the aforesaid failure of the materials that comprise the Safety Features of the Strapping Devices of the Helmet, which are warranted and represented to not fail upon impact, but which did, in fact, fail upon impact and which failed to protect the Plaintiff. The Plaintiff never altered and/or changed the Helmet since the date of purchase.

27.) The failure of the Helmet's safety features was necessarily due to the fault and negligence of the Defendant in the manufacture, design, compilation, configuration, usage of products and/or materials; that, under the circumstances above alleged, it is the duty of the Defendant to explain, if it can, why it was not negligent and in releasing said Helmet for sale to the Plaintiff in such a condition that it would fail upon impact and cause injury to persons and particularly to the Plaintiff.

28.) The Plaintiff pleads the doctrine of "Res Ipsa Loquitur", and under said doctrine alleges that the Defendant is liable and responsible to the Plaintiff for all damages suffered by the Plaintiffs as a result of the failure of the Helmet as herein alleged.

29.) Liability is additionally asserted by the Plaintiff against the Defendant on grounds of breach of express warranty, breach of implied warranty of fitness, and breach of implied warranty of merchantability, respectively.

30.) Prior to the purchase of the Helmet by the Plaintiff as above alleged, the Defendant induced purchases of the Helmet by expressly warranting to the Plaintiff by advertisements directed to the attention of the public, and particularly to the ultimate consumers, that such

consumers, including this Plaintiff, could safely use such a Helmet and that it would require no attention or special precautions. The said Defendant expressly warranted said Helmet as meeting the minimum standards as required by the Federal Government.

31.) In purchasing the Helmet, the Plaintiff relied upon the skill and judgment of the Defendant and upon Defendant's express warranty as described herein.

32.) At the time of the purchase of the Helmet by the Plaintiff, the express warranties were not true and the Helmet was, in fact, not safe or reasonably suitable and fit for the use as advertised without special attention and precautions, and as a direct result of said breach of express warranties the accident and injuries occurred as set forth herein.

33.) As a direct proximate result of the breach of express warranty by the Defendant, the Plaintiff was caused to sustain a severe injury and damage, including, but not limited to damages on his face and head, which were sustained by and as a result of the failure of the Helmet to perform in the manner and method for the particular purpose for which it was purchased.

34.) The Defendant herein impliedly warranted such Helmet was fit for the purpose for which it was designed, that it was a safe and suitable instrument to be used in the usage of a motorcycle and that said product was fit and suitable for that purpose. That in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose, the Plaintiff purchased said helmet as herein described.

35.) That said Helmet was, in fact, not fit for use for its intended purpose and as a proximate result of the breach of said warranty of fitness, the Plaintiff sustained injuries and damages as herein alleged.

36.) The Defendant impliedly warranted that said Helmet was of merchantable quality, fit, safe and in proper condition for the ordinary use for which Helmets are designed and used.

That in reliance upon said implied warranty of merchantability, the Plaintiff purchased said Helmet as set forth herein.

37.) That said Helmet was not of merchantable quality and was unfit, unsafe, and unusable for the purpose for which it was intended.

38.) As a direct and proximate result of the breach of implied warranty of merchantability as herein alleged, the Plaintiff was injured and suffered damages as set forth herein.

39.) At all times herein referred to, the Defendant was engaged in the business of preparing, manufacturing, developing, testing, inspecting, packaging, labeling, advertising, merchandising, selling and distributing a product known as a Helmet.

40.) The Defendant developed, manufactured, packaged, labeled, merchandised, and distributed the said Helmet for its sale and distribution to the general public for use by them as a Helmet.

41.) The Plaintiff is a member of the general public living in the Commonwealth of Massachusetts and was at all times relevant, which was known to the Defendant at the time of the sale of said Helmet to the Plaintiff.

42.) The Defendant, acting through its officers, agents, servants, representatives or employees, delivered the said Helmet to members of the general public for use as a Helmet; the Defendant represented by implication or otherwise through advertising that the said Helmet was safe when used for the purpose for which it was intended to be used.

43.) The Defendant willfully, falsely and knowingly misrepresented material facts relating to the character, and quality, of said Helmet, which such misrepresentations are contained in the various media of advertising disseminated or caused to be disseminated by the Defendant,

Page #10
Wednesday, January 07, 2004

and such misrepresentations were reiterated and disseminated by officers, agents, representatives, servants or employees of the Defendant acting within the line and scope of their authority so employed by Defendant to merchandise and market said Helmet, and the Plaintiff further alleges that in reliance upon said misrepresentations as they were made known to him, he purchased a Helmet, and in the use for which said product was intended, as a direct and proximate result and consequence of the said misrepresentations of the Defendant, the Plaintiff was injured and the Plaintiff was damaged as set forth herein.

44.) The Defendant negligently and recklessly misrepresented various material facts regarding the quality and character of the said Helmet, under circumstances where the Defendant either knew, or in the exercise of reasonable care, should have known, the said various facts made the subject of said representations were not true or were not known to be true, which such misrepresentations were contained in various advertising media by Defendant, and such misrepresentations were further reiterated and disseminated by the officers, agents, representatives, servants or employees of the defendant acting within the line and scope of their authority, so employed by the Defendant to merchandise and market said Helmet.

45.) The Plaintiff further alleges that such advertising information and such representations made by Defendant's officers, agents, representatives, servants or employees were delivered by the Defendant to the general public, including the Plaintiff, during all relevant periods of time, to market and distribute said Helmet to the general public; and Plaintiff, in reliance upon such misrepresentations as were made known to him, purchased the Helmet for his own personal use, and as a direct and proximate result and consequence thereof, the Plaintiff suffered the injuries and damages set forth herein.

**LAW OFFICES OF
JOSEPH S. PROVANZANO**

Page #11
Wednesday, January 07, 2004

46. )   The Defendant knew that its Helmet would be sold to the public and would be used by persons such as the Plaintiff and would be relied on by such persons to safely do the job for which it was manufactured.

47. )   The product manufactured and distributed by the Defendant caused harm to the Plaintiff on October 24, 2001 and the Defendant, because of its position as a manufacturer, owed a strict duty to the Plaintiff not to harm the Plaintiff through the use of Defendant's product.

48. )   As a result of the use of Defendant's product on October 24, 2001, the Plaintiff suffered serious, severe, disabling and permanent injuries, and as a result thereof Defendant is strictly liable to the Plaintiff for its failure to deliver a product to the Plaintiff that would not cause the Plaintiff harm.

49. )   Pursuant to 49 USC 30101, et. seq.; 15 USCS § 1397, et. seq., and the National Traffic and Motor Vehicle Safety Act of 1966 and of the Federal Motor Vehicle Safety Standard, hereinafter "FMVSS", No. 218, the Helmet, by the placing of a "DOT" Sticker thereupon, is warranted and represented by the Defendant as passing all applicable testing and requirements relating to motorcycle Helmets. In fact, the Helmet failed said testing.

50. )   The standards which the Helmet in question were supposed to meet are outlined in 540 C.M.R. 22:08, which incorporates parts of the National Traffic and Motor Vehicle Safety Act of 1966 and of the Federal Motor Vehicle Safety Standard, hereinafter "FMVSS", No. 218. These laws place the burden of certification on the manufacturer of the Helmet, the Defendant. The manufacturer then affixes a DOT label. Only a manufacturer is allowed to place a DOT label on a Helmet. The Plaintiff's Helmet had a DOT label affixed when he purchased the Helmet. The Plaintiff relied on the warranties and representations by the DOT Sticker being placed upon said Helmet by the Defendant. FMVSS No. 218, Section S5.6.1(e).

**LAW OFFICES OF
JOSEPH S. PROVANZANO**

51.) In fact, the Helmet did not meet the standards of the FMVSS No. 218, including that the Federal Government has not approved the make and model of the Helmet in issue. For example, before conducting any of the testing sequences, the Helmet would have to be exposed to any of the following four conditions:

> a.) *Ambient conditions.* Expose to a temperature of 70°F (21°C) and a a relative humidity of 50 percent for 12 hours.
>
> b.) *Low temperature.* Expose to a temperature of 14°F (-10°C) for 12 hours.
>
> c.) *High temperature.* Expose to a temperature of 122°F (50°C) for 12 hours.
>
> d.) *Water immersion.* Immerse in water at a temperature of 77°F (25°C) for 12 hours.
>
> National Highway Traffic Safety Administration, DOT §571.218 Standard No. 218; Motorcycle Helmets, Section S6.4.1 a-d. (1998).

52.) In fact, the Helmet did not meet the requirements of National Highway Traffic Safety Administration, DOT §571.218 Standard No. 218; Motorcycle Helmets, Section S7.3, et. seq., (1998), as concerns the safety of the retention device.

53.) After October 24, 2001, the Defendant indicated that the Helmet did not meet the safety requirements of the National Highway Traffic Safety Administration, DOT §571.218 Standard No. 218; Motorcycle Helmets, as it was indicated that the safety strap mechanism and/or device, known as the "loop", would fracture and/or break upon impact, as did the Helmet in issue. No Notice of Recall was ever issued by the Defendant to the Plaintiff.

**WHEREFORE,** the Plaintiffs prays and demand Judgment against the Defendant in an amount determined by this Court to be fair and reasonable, including interest, costs and reasonable attorney fees, and that the Judgment include multiple damages, double or triple

**LAW OFFICES OF
JOSEPH S. PROVANZANO**

damages, interest, costs and reasonable attorney fees and that the Plaintiffs be awarded such other and further as is just and equitable.

Respectuflly,
Edward M. Taylor,
Leslie Taylor,
By Their Attorney,

Joseph S. Provanzano, Esquire
BBO No. 407400
Law Offices Of
**JOSEPH S. PROVANZANO**
16 Bourbon Street, Suite C
Peabody, MA 01960-1338

Telephone   : (978) 535 - 8222
Date        : Wednesday, January 07, 2004
File No.    : M01-1423