UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

EDWARD M. TAYLOR,    and        \*
LESLIE TAYLOR,                  \*
                                \*
                   Plaintiffs,  \*
                                \*    **CIVIL ACTION NUMBER**
        -- vs. --               \*
                                \*    **03-CV-12600-RBC**
NEXL SPORTS PRODUCTS,           \*
also known as NEXL SPORTS HELMETS, \*
                                \*
                   Defendant.   \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### JOINT PRETRIAL MEMORANDUM

### PARTIES

1. ]    The Plaintiffs are Edward M. Taylor and Leslie Taylor, are husband and wife,

who, at all times relevant, resided at 118 Seaver Street, East Taunton, Bristol County,

Massachusetts. There is no dispute by the parties to this allegation. The claims of Leslie Taylor,

herein after "Leslie" and/or "Plaintiff's Spouse" are for loss of consortium.

2. ]    The Defendant is NexL Sports Products, also known as NexL Sports Helmets, a

foreign corporation, with a principal place of business at 121 Aviation Way, Watsonville

California, 95076. The Defendant is the designer, manufacturer and distributor of NexL Sports

Helmets, for use when riding a motorcycle. There is no dispute by the parties to this allegation

### PLAINTIFF'S STATEMENT OF RELEVANT FACTS

3. ]    On or about October 24, 2001, the Plaintiff, Edward Taylor, herein after the

"Plaintiff" or "Edward", was lawfully operating his motorcycle on Route 140, Southbound, in

Shrewsbury, Worcester County, Massachusetts, when his motorcycle collided with an

### JOINT PRETRIAL MEMORANDUM

automobile, which had turned left, in front of the Plaintiff's oncoming motorcycle, herein after

the "Accident". Prior to the Accident, Edward placed the Defendant's motorcycle helmet upon his

head, then hearing the "snap noise", indicating its chin strap was securely fastened. While in

route, Edward was crossing over a bridge area and the wind caused his helmet to tilt backward,

ever so slightly, so that he fixed it, by tilting it forward, into the correct position and pulled upon

the chin strap to ensure it was still secure. Edward was traveling on Route 140, Southbound. As

he approached the "T" type intersection of Route 20, which was on his right, Edward slowed

down to about 25 or 30 m.p.h. Edward was waved on after making eye to eye contact with a

stopped truck driver. As he then entered the intersection, a 1993 Honda Civic, four door sedan,

attempting to make a left hand turn, pulled in front of him, without warning or indication thereof.

Edward stated that, on the date of the accident, he was operating his motor cycle well below the

speed limit and in the middle of the roadway. He was going straight and a little down hill. A

vehicle was coming in his direction from the other travel direction, which is slightly up hill,

toward Edward, and this is the car that struck Edward. At the intersection, with the Route 20 "on

ramp" entrance, a truck was sitting and the driver caught the attention of Edward and waved him

through the intersection. The truck never moved. As Edward proceeded into the intersection,

without warning or a directional signal, the female other operator changed her course of travel,

turning directly in front of Edward. Her car was going left to right in front of Edward. Edward

had little, to no, time to respond or to take evasive action, so that his motor cycle and the car

collided, more than one time. The car, at one point, then was accelerating. The impact on the car

was in the two [2] passenger doors area. The impact with Edward's motor cycle was initially near

the front side the front tire and the cycle turned, on its own, causing Edward and the cycle to hit

the side of the car, at the passenger doors area. The motor vehicle would then be traveling to the

## JOINT PRETRIAL MEMORANDUM

right as Edward was attempting to turn to the left. The Plaintiff and the Helmet struck the car on the side, on the right, below the helmet itself, and near or slightly above the ear area. The loop area was impacted and the loop fractured in one or more places. Edward bounced away from the car and the cycle and he then went back into the car, when, suddenly, the Helmet, after striking the motor vehicle again, in about the same manner and fashion, was taken away by the car, such that it was jerked off Edward's head, with the loop completely breaking. It was on the right side that the loop broke. The loop design was recalled by the government and is no longer made. The Plaintiff states that after the Helmet came off of his head, Edward struck the car again, with his unprotected head, and it caused him to be knocked somewhat unconscious and to not have control over his body, so that his body then flew over the rear portion of the car, rolling down the highway. The Helmet went down the highway and was eventually retrieved by a police officer and given to Edward. Upon impact with the other motor vehicle, the Plaintiff's helmet, mandatory wearing and compliance with the Federal Department of Transportation, herein after "DOT," required in Massachusetts, which was designed, manufactured and distributed by the Defendant, malfunctioned, broke, fractured, and/or otherwise failed, causing it to separate from the Plaintiff's head and allowing injury and damage to the Plaintiff. As a direct result of the defective design, defective manufacturing of, malfunction in, and/or failure thereof, under circumstance foreseeable and/or expected by the Defendant, the Plaintiff, deprived of the ability to further protect himself thereafter, sustained severe bodily injuries and emotional damages. The Plaintiff sustained injuries to his face, abrasions to his head, a concussion, headaches, injuries to his neck, knees, and legs. These injuries resulted, in part, from the failure to function for a particular purpose and/or as a result of the malfunction and/or defect of the Defendant's helmet that, in spite of the Plaintiff's proper use, broke and/or otherwise failed and then failed to protect

## JOINT PRETRIAL MEMORANDUM

Page No.4
Tuesday, April 25, 2006

the Plaintiff during the motor vehicle accident in issue. These facts are established by the

Complaint, Answer, oral Depositions of the parties and witnesses, and from the documents

exchanged by the parties.

4. ]    The Plaintiff, who at all times relevant, was a domiciliary of the Commonwealth

of Massachusetts, purchased a certain "Beanie DOT Motorcycle Helmet", herein the "Helmet",

directly from the Defendant. The Defendant held out said helmet to be of superior quality,

design, and strength, upon which the Plaintiff relied. In summary, the Defendant held out this

Helmet as being the best that could be purchased and stronger than anything available for

purchase. The Defendant, by affixing a DOT sticker upon the Helmet, certified that it met and/or

exceeded the requirements of Federal Motor Vehicle Safety Standard, Number 218. The

Defendant shipped and delivered the Helmet to the Plaintiff, in Massachusetts, and payment

therefor was made from Massachusetts. The Helmet was firmly sealed in its original carton and

the Plaintiff did not alter or change the Helmet in any way. The Plaintiff wore the helmet, at all

times relevant, in the manner and method as prescribed by the Defendant. These facts are

established by the Complaint, Answer, oral Depositions of the parties and witnesses, and from

the documents exchanged by the parties.

5. ]    The Defendant, at all times relevant, was the designer, manufacturer, and/or

distributor of the Helmet. The Defendant sells Helmets and other products in the Commonwealth

of Massachusetts and other states. Such Helmets are produced for ultimate use by consumers,

who use them as "safety devices" when operating a motorcycle. The Helmet was warranted and

represented as being in full compliance with all of the Federal Motor Vehicle Safety Standards,

including Number 218, and the Requirements as stated therein. These facts are established by the

## JOINT PRETRIAL MEMORANDUM

Complaint, Answer, oral Depositions of the parties and witnesses, and from the documents exchanged by the parties.

6. ]    The Helmet did not comply with Federal DOT Motor Vehicle Safety Standard and after October 21, 2001, the Helmet was subject to a "product recall" by the Department of Transportation, National Highway Traffic Safety Administration [NHTSA]. No notice was ever given to the Plaintiff. In the recall notice, it was indicated that the safety strap mechanism or devices known as the "loop", would fracture, break or otherwise fail, upon impact. This is exactly what took place in the subject motor vehicle accident. These facts are established by the Complaint, Answer, oral Depositions of the parties and witnesses, and from the documents exchanged by the parties.

7. ]    The damages and injuries to the Plaintiff were caused, in part, by the negligence of the Defendant. Such negligence included, *inter alia*, the following: [a.] Failure to warn by statement on the Helmet, instruction booklet, or otherwise, of the dangers encountered if the helmet's safety features were to fail; [b.] Failure to warn that the Helmet was not properly tested and that the "DOT" Sticker, placed thereupon by the Defendant was, in fact, incorrect and improper as the Helmet would fail and did fail to meet the Federal Motor Vehicle Safety Standard Number 218, indicated as being met or surpassed by the DOT Sticker being placed thereupon; [c.] Failure to warn that the Helmet had failed the testing by the DOT and that the Helmet should not have been distributed to the public, and not used as a safety device when riding a motorcycle, and that by wearing the Helmet and being involved in a motor vehicle accident, a consumer may suffer death or permanent and disabling injury should the Helmet's safety features fail to perform in a manner and method as represented. Warranted and stated; [d] Failure to design the Helmet so that it would meet the minimum standards as called for by the

## JOINT PRETRIAL MEMORANDUM

DOT, the Federal Government and the Commonwealth of Massachusetts or all three, as stated in the safety standard known as Federal Motor Vehicle Safety Standard Number 218; [e] Failure to design the Helmet in such manner, in compliance with Federal Motor Vehicle Safety Standard Number 218, so as to avoid or minimize the extreme risk to users of the helmet should a motor vehicle accident occur; [f.] Falsely placing a DOT Sticker upon said Helmet so as to falsely warrant and represent that all relevant testing had been conducted upon the Helmet successfully when, in fact, the Helmet would not and did not pass such testing; [g.] Failure to design a Helmet to function and serve as a protection device during a motor cycle accident, which is the particular purpose for which such helmets are purchased and used; [h.] Failure to manufacture a helmet that meets the required safety standards and/or the standards as warranted and represented by the Defendant; and [i.] Manufacturing a helmet that was in fact defective. These facts are established by the Complaint, Answer, oral Depositions of the parties and witnesses, and from the documents exchanged by the parties.

8. ]    The Plaintiff pleads *Res Ipsa Loquiitur*, and under said doctrine allege that the Defendant is liable and responsible to the Plaintiff for all damages suffered by the Plaintiff, as a result of the failure of the Helmet as herein alleged.

9. ]    Liability is asserted against the Defendant on the grounds of breach of implied warranty of fitness, and breach of implied warranty of merchantability. These facts are established by the Complaint, Answer, oral Depositions of the parties and witnesses, and from the documents exchanged by the parties.

.    10. ]    Pursuant to 49 U.S.C. 30101 et. seq.; 15 USCS Section 1397, et. seq; the National Traffic and Motor Vehicle Safety Act of 1966, and of the Federal Motor Vehicle Safety Standard Number 218, herein after "FMVSS No. 218", the Defendant, by placing a DOT Sticker upon the

**JOINT PRETRIAL MEMORANDUM**

Page No.7
Tuesday, April 25, 2006

Helmet, warranted and represented that the Helmet met and/or exceeded all requirements relating to motorcycle helmets when, in fact, the Helmet failed in such testing. The standards that the Helmet in question were supposed to meet are outlined in 540 Commonwealth of Massachusetts Regulations 22:08, which incorporates the National Traffic and Motor Vehicle Safety Act of 1966 and the FMVSS No. 218. These place the burden of proper certification on the manufacturer of the Helmet, being the Defendant. The Plaintiff relief thereupon. The manufacturer then affixes a DOT label. Only a manufacturer is allowed to place a DOT label on a helmet. The Plaintiff's Helmet had a DOT label affixed when he purchased it from the Defendant. The Plaintiff relied upon the warranties and representations, by the DOT Sticker being affixed by the Defendant. FMVSS No. 218, Section S5.611(e). In fact, the Helmet did not meet the standards of FMVSS No. 218, including that the Federal Government has not approved the make and model of the Helmet at issue. The Helmet did not pass such tests and no Notice of recall was ever issued to the Plaintiff. These facts are established by the Complaint, Answer, oral Depositions of the parties and witnesses, and from the documents exchanged by the parties.

11. ]    The Defendant's actions are alleged to constitute unfair or deceptive acts or practices within the meaning of Massachusetts General Laws, Chapter 93A, and such other statutes, rules and regulations that may be applicable. If these issues are allowed to go forward, they would be decided by the Court, after the trial on the issues. The actions of the Defendant, as alleged herein, were willfully and knowingly performed and the Plaintiffs are entitled to double or treble damages, interest, costs and reasonable attorney's fees. The Plaintiffs issued a Demand Letter, or Letters, pursuant to the provisions of Massachusetts General Laws, Chapter 93A, a copy of which was attached to the Complaint and incorporated herein by reference.

## DEFENDANT'S STATEMENT OF RELEVANT FACTS

## JOINT PRETRIAL MEMORANDUM

12. ]

## CONTESTED ISSUES OF FACT

13 ]    The Defendant disputes the Plaintiff's contentions that the Helmet loop broke, malfunctioned, was defectively designed or manufactured, or otherwise failed to protect the Plaintiff and/or was defective.

14. ]    The Defendant allege that other parties are responsible for the Plaintiff's injuries and damages.

## PLAINTIFF'S PROPOSED WITNESSES LIST

15. ]    Mr. Edward Taylor, the Plaintiff. Mr. Taylor will present testimony on the events and factual allegations as stated herein above and as concerns his injuries and damages.

16.]    Ms. Leslie Taylor, the Plaintiff. Mrs. Taylor will present testimony as to the impact of this accident to the lives and relationships by and between the two Plaintiffs.

17. ]    Marcy Hersh, M.D. The testimony of Dr. Hersh will be presented by way of the medical records produced by this provider of medical services to Edward.

18. ]    Keeper of Records, Bridgewater Park Medical Associates. The testimony of this medical provider of services will be presented by way of the medical records produced by this provider of medical services to Edward.

19. ]    Keeper of Records, Umass Memorial Medical Center. The testimony of this medical provider of services will be presented by way of the medical records produced by this provider of medical services to Edward.

20. ]    Keeper of Records, Brockton Regional MRI Center. The testimony of this medical provider of services will be presented by way of the medical records produced by this provider of medical services to Edward.

## JOINT PRETRIAL MEMORANDUM

21. ]    Dr. William Mitchell, M.D. The testimony of this medical provider of services will be presented by way of the medical records produced by this provider of medical services to Edward.

22. ]    Albert Ackil, M.D. The testimony of this medical provider of services will be presented by way of the medical records produced by this provider of medical services to Edward.

23.  ]    Sharonah Soumeka, M.D. The testimony of this medical provider of services will be presented by way of the medical records produced by this provider of medical services to Edward.

24. ]    Alan Griff, Plastics Expert. This expert will most likely not be available at the scheduled time of this trial and will most likely not be called as a witness to testify.

25. ]    Kristopher J. Seluga, M.S., P.E., Expert. The testimony of this expert will be provided, either by him or by way of his associate, Dr. Irving U. Ojalvo, and will establish the defective design and/or manufacture of the helmet in issue and that it failed all testing required of such helmets.

26. ]    Dr. Irving U. Ojalvo, Expert. The testimony of this expert will be provided, either by him or by way of his associate, Kristopher J. Seluga, M.S., P.E., and will establish the defective design and/or manufacture of the helmet in issue and that it failed all testing required of such helmets.

27. ]    Kevin Warwick, Shrewsbury, MA Police Officer. It is not anticipated that there will be any dispute that this officer retrieved the Helmet in issue, but should it be the case then he will either provide live testimony or testimony by way of oral Deposition testimony.

## JOINT PRETRIAL MEMORANDUM

28. ]    Lynn M. Coleman, Central Massachusetts E.M.S. Corp. The testimony of this

medical provider of services will be presented by way of the medical records produced by this

provider of medical services to Edward.

## PRIOR MEDICAL HISTORY

29. ]    The Plaintiff believes that the prior medical history of the Plaintiffs is not an

issue.

## PLAINTIFF'S ITEMIZATION OF DAMAGES

30. ]    As a result of the motor vehicle accident, the Plaintiff, Edward Taylor, was

diagnosed at the hospital and by subsequent medical providers with, at least, the following

injuries and symptoms: [a.] Fractured right knee; [b.] Torn PCL ligament of right knee; [c.] Torn

ACL ligament of right knee; [d.] Head Injuries and/or Headaches, including concussion, closed

head injury, cuts abrasions and permanent hair loss; [e.] Permanent scarring on his right leg and

ankle; [f.] Lower torso strain; [g.] Lumbar sprain/strain; [h.] Cervical sprain/strain; [i.] Cuts,

contusions and abrasions; [j.] Neck pain; and [k.] Loss of feeling from right hip and right leg.

31. ]    As a result of the motor vehicle accident, the Plaintiff, Edward Taylor, has

incurred, at least, the following expenses: [a.] UMass Memorial Medical Center of $ 6,401.00;

[b.] Brockton Regional MRI Center of $ 9,900.00; [c.] Bridgewater Park Medical Associates in

the sum of $ 2,100.00; [d.] Umass EMS of $ 659.00; and [e.] the Plaintiff has requested updated

medical reports and invoices and may have to issue Summons Forms to have them delivered to

the Court by the Keepers of Records thereof. The total of the expenses stated is $ 19,060.00 and

does not include surgery invoices still not received. In addition, there were out of pocket

expenses of: [a.] Lost Wages estimated to be $        23,080.00; [b.] Pain Medication of $

115.61; [c.] Property Damages of $ 4,609.71; [d.] Personal Property damages of $ 1,574.66; [e.]

## JOINT PRETRIAL MEMORANDUM

Towing and Storage in the sum of $ 480.00; and [f.] Substitute Transportation of $ 1,592.71; for a total amount in the sum of $ 31,452.69. In addition, the Plaintiff alleges that the Plaintiff has sustained pain and suffering and emotional damages of: [a.] Total Disability estimated to be for 16 weeks at the sum of $ 1,000.00 per week or $ 16,000.00; [b.] Partial Disability estimated to be from 2/02 to 04/03 and at other times during which medical treatment was provided at $ 500.00 per week or the sum of $ 31,000.00; [c.] Residual Disability estimated by the Life Tables to be introduced by the Plaintiff as an Exhibit, indicate a reasonable Life Expectancy of approximately 22 years at a minimal rate of $ 250.00 per week equals $ 286,000.00; and [d.] Loss of Consortium by the Plaintiffs of $ 25,000.00. These damages equal $ 333,000.00.

## PLAINTIFFS' EXHIBITS

32. ]    All medical treatment records, bills, test results, and notes as concerns and as relate to the Plaintiff, Edward Taylor.

33. ]    Life Expectancy Tables as Produced by the United States Government.

34. ]    All Operator's Motor Vehicle Accident Reports and Police Reports.

35. ]    All Pleadings.

36. ]    Lost Wages from Income and wage Documents, Property Damage Reports and Estimates; and Replacement Services Documents and Invoices.

37. ]    Federal Motor Vehicle Safety Standard, Number 218; Government and Defendant Files on the Helmet; Testing by NHTSA, and Product Recall Orders.

38. ]    Shrewsbury Police Department Incident Report on the October 24, 2001 motorcycle accident  This provides a description of the accident as well as a summaries of eye witness descriptions.

## JOINT PRETRIAL MEMORANDUM

Page No.12
Tuesday, April 25, 2006

39. ]    Photographs of a 1993 Honda Civix LX. These photographs are not of the vehicle that struck Mr. Taylor but they are representative of vehicles of that year, make and model. The vehicle that struck Mr. Taylor sustained a flat tire on the passenger's side.

40. ]    UMASS Memorial Hospital Medical Records. These are the ambulance and emergency room records of the treatment of Mr. Taylor immediately following the accident.

41. ]    Oral Deposition of Mr. Gilbert John Williams, owner of NexL Sports Helmets.

42. ]    Deposition Exhibit Package, including therein are copies of the Complaint, Amended Complaint, Defendant's Answers to Interrogatories, Defendant's Production of Documents; Defendant's Response to Admissions, NexL Sports Beanie DOT Motorcycle Helmet Pages, and the March 26, 2002 Safety Alert Recall Notice.

43. ]    The Department of Transportation's Final Test Report for NexL Helmets, DOT Safety Compliance for FMVSS No. 218 Motorcycle Helmets.

44. ]    Department of Transportation ODI Recall for Nexl Helmets.

45. ]    Internal NexL documents outlining its communications with the NHSTA regarding the recall of NexL's Beanie Helmets.

46. ]    SNELL Testing Data on the Helmet.

47. ]    Photographs of the accident scene Route 20 on ramp/Route 140.

48. ]    Summary of Mr. Taylor's injuries and treatment by Marcy Hersh, M.D. dated November 10. 2005 and supporting testing and records.

49. ]    MRI Reports for Mr. Edward Taylor.

50. ]    Pain Management Evaluation for Mr. Edward Taylor concerning the treatment and evaluation of his post traumatic headaches and continued pain associated with the head trauma caused by this accident.

## JOINT PRETRIAL MEMORANDUM

Page No.13
Tuesday, April 25, 2006

51. ]    The Helmet worn by Mr. Edward Taylor, on October 24, 2001.

## DEFENDANT'S EXHIBITS

52. ]

## DISPUTED EXHIBITS

53. ]    None known at this time.

## PLAINTIFF'S EXPERT WITNESSES

54. ]    Alan Griff, Plastics Expert. The Plaintiffs have advised the Defendant that this expert will not be available to testify during the trial times allotted to this case.

55. ]    Kristopher J. Seluga, M.S., P.E., Technology Associates, L.L.C., 1011 High Ridge Road, 2 nd. Floor, Stamford, CT 06905. Either this expert of Dr. Ojalvo will testify.

56. ]    Dr. Irving U. Ojalvo, Technology Associates, L.L.C., 1011 High Ridge Road, 2 nd. Floor, Stamford, CT 06905. Either this expert of Mr. Seluga will testify.

57. ]    Sharonah Soumeka, M.D., Treating Physician. This doctor's records will be introduced into evidence.

58. ]    Albert A. Ackil, M.D., Treating Physician. This doctor's records will be introduced into evidence.

59. ]    Marcy Hersh, M.D., Treating Physician. This doctor's records will be introduced into evidence.

## DEFENDANT'S EXPERT WITNESSES

60. ]

## JOINT PRETRIAL MEMORANDUM

Page No.14
Tuesday, April 25, 2006

## TESTIMONY OF THE PARTIES

61. ]    The Plaintiff will testify as to the accident and the injuries, including how they impacted and affected his life. The Plaintiff's Spouse will testify as to how the damages and injuries sustained by the Plaintiff have impacted upon their lives and marriage. The Defendant, in summary, will testify that the Defendant is not responsible for the Plaintiff's injuries and damages. The experts will testify that the positions of their respective clients have merit.

## PLEADINGS/DISCOVERY TO BE COMPLETED

62. ]    None, other than as noted upon this Court's Pretrial Conference Order.

## LENGTH OF TRIAL

63. ]    It is expected that this trial should be concluded in three [3] full days of trial testimony. The Plaintiff has advised the Defendant that expert testifying for the Plaintiffs will be available and will be in this Commonwealth on Wednesday, May 24, 2006.

> Respectfully,
> Edward M. Taylor,
> Leslie Taylor,
> By Their Attorney,
>
> Joseph S. Provanzano, Esquire
> BBO No. 407400
> **Law Offices of**
> **JOSEPH S. PROVANZANO**
> 16 Bourbon Street
> Peabody, MA 01960-1338

Telephone    : 978-535-8222
Date         : Tuesday, April 25, 2006
Our File No. : P09-1423

## JOINT PRETRIAL MEMORANDUM

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **EDWARD M. TAYLOR**<br>**and LESLIE TAYLOR,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**NEXL SPORTS PRODUCTS a/k/a**<br>**NEXL HELMET SPORTS,**<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CIVIL ACTION**
**NO.: 03-CV-12600-NMG**

Defendant NexL Sports Products a/k/a NexL Helmet Sports ("Defendant') hereby submits the following portions of the pre-trial memorandum in the above-captioned case. Due to incompatibility of formatting in the two word processing programs used by counsel for the parties, the parties were unable to merge the two submissions into one continuous document.

## CONCISE SUMMARY OF THE EVIDENCE TO BE OFFERED BY DEFENDANT

Defendant will offer testimony from a representative of Defendant, as well as documents regarding pre-manufacturing testing of the helmets, which proves that the helmet involved in the accident referenced in the Plaintiffs' complaint was not defective. In addition, Defendants will offer expert testimony of a biomechanical engineer to show that the forces acting on Mr. Taylor and the helmet during the accident were insufficient to either tear the helmet off of his head or cause the significant head injuries alleged by Mr. Taylor. This evidence will be further supported by the condition of the helmet itself and the medical records of Mr. Taylor. Moreover, the medical records will show that Mr. Taylor had significant preexisting medical conditions,

including a prior fracture of the patella. Testimony regarding the facts and circumstances surrounding the accident will prove that the negligence of Mrs. LaBonte was a superceding, intervening cause of the accident.

More important that what the evidence proffered by Defendant will show is what the evidence proffered by Plaintiffs will not show. There is no evidence to prove that the alleged defect to the helmet, to the extent that it even existed, caused or exacerbated the bulk of the injuries alleged by Mr. Taylor, which were to his lower body – specifically the fractured patella, torn ligaments and meniscus damage in his knee.

Defendant will also offer as evidence the warranties for the helmet, which adequately warn purchasers of the need to fit the helmet properly to the head for maximum protection, and give instructions on how to do so.

## STIPULATED FACTS

On or about October 24, 2001, Mr. Taylor was involved in a motorcycle accident while driving southbound on Route 140 at the intersection with Route 20 in Shrewsbury, Massachusetts. Mr. Taylor's motorcycle collided with 1993 Honda Civic four-door sedan driven by Carol LaBonte, which had turned left directly into the path of Mr. Taylor. A truck was sitting at the intersection, and the driver, Robert Russell, witnessed the accident. Officer Kevin Warwick responded to the scene of the accident and recovered the helmet involved in the accident.

Mr. Taylor purchased a helmet of the model referenced in the Complaint from Defendant. Defendant designed and manufactured the helmet model referenced in Mr. Taylor's Complaint, a "Beanie DOT Motorcycle Helmet". Defendant tested the model of helmet referenced in the Mr. Taylor's Complaint, including the retention strap. Defendant affixed a "DOT" sticker to the Mr.

2

Taylor's helmet and warranted and represented that the helmet met all applicable Federal Safety Standards.

Mr. Taylor was an experienced rider from the age of 17 to 28, but did not ride again until he was 52-53, a year or so before the accident.

## **DEFENDANT'S STATEMENT OF FACTUAL ISSUES IN DISPUTE**

There is no evidence that the retention system for the helmet in question, the "Beanie" helmet, was defective. Testing done by Defendant prior to the accident indicated that the chin strap easily met the requirements of the DOT with respect to the total load that the strap was required to bear. About 150 to 200 tests of Defendant's helmets were performed at SNELL between 1996 and 2000, prior to the start of manufacturing in October-November 2000. All helmets passed the "GTFMVSS 218 certification protocol." Moreover, Defendant's expert witness will opine that based on the nature of Mr. Taylor's injuries and the state of the helmet itself there is no evidence to support a finding that the loop lock retention system failed during the accident. Defendant contends that this strap only failed in testing with 230-250 lbs on each side, and that the 300 lbs DOT requirement is on the total load on the whole strap, or 150 lbs per side. The straps on the helmet in question were capable of holding in excess of 400 lbs total load during testing, and no straps were ever broken during the testing process.

There is no evidence to support the contention that there was sufficient force at impact to cause the retention loop to break. The accident report indicates a "<25 mph slide into car," which the defense expert will testify is insufficient force to tear the helmet from the Plaintiff's head. According to the 1997 "Feasibility Study of Upgrading FMVSS No. 218, Motorcycle Helmets performed by the Head Protection Research Laboratory of the University of Southern California on behalf of the DOT, tearing of a helmet from the head of a motorcycle rider is a

"rare" occurrence because "no equivalent forces seem to occur in motorcycle collisions," with such instances resulting only where the "helmet gets run over and snagged on a vehicle's undercarriage." There is no evidence to support a finding that sufficient force was applied to the top of the helmet to pull it off of Mr. Taylor's head during the accident. In addition, an inspection of the helmet reveals little or no damage to the exterior of the helmet.

The warranties for the helmet adequately warn purchasers of the need to fit the helmet properly to the head for maximum protection, and give instructions on how to do so.

Despite the contention of Mr. Taylor that prior medical history is not at issue in this case, medical records for Mr. Taylor indicate that he had significant preexisting medical conditions, including a preexisting fractured of the patella.

There is little to no evidentiary support for Mr. Taylor's contention that he suffered "significant" head injuries as a result of the accident. The EMS report shows only a small abrasion to the head and a complaint of dizziness, and indicates no memory loss or loss of consciousness. The medical records indicate that he had a few minutes where he lost consciousness at the hospital and complaints of persistent headaches, but no memory or other neurological deficits. A CT scan taken on December 7, 2001 revealed no evidence of inter-cranial injury and a second CT scan on February 4, 2002 revealed no abnormality. In addition, there is no evidence in the records of a concussion, and the defense expert will opine that Mr. Taylor did not experience sufficient "loading conditions" during the accident to suffer a concussion.

The recall of the helmets was based on a **failure during penetration testing**, *i.e.*, that "an obstacle may penetrate the helmet, possibly resulting in head injury." Defendant contests any assertion that there was a defect in the helmets related to the retention system.

## DEFENDANT'S STATEMENT OF THE ISSUES OF LAW
## AND SUPPORTING AUTHORITY

Even if the helmet were defective, the alleged defect was not the direct and proximate cause of Mr. Taylor's injuries. In the first instance, the accident was clearly caused by the negligence of Mrs. LaBonte, the driver of the automobile that Mr. Taylor crashed into during the accident. This is illustrated by admissions of the plaintiff as well as in the police report, which lists LaBonte as the cause of the accident. Mrs. LaBonte's negligence was an intervening, superseding cause that extinguished any causal connection to Defendant. See Kent, 437 Mass. 312, 321-22 (2002) (summary judgment for defendant appropriate where third party's act intervenes to cause harm); see also Silber v. Motorola, Inc., 274 A.D.2d 511 (N.Y.A.D 2nd Dept. 2000) (accident proximately caused by distracted driver, not manufacturer of defective cell phone cradle).

Moreover, Plaintiffs cannot show that the alleged defect was "a substantial contributing factor in producing damages over and above those which probably would have been caused as a result of the original impact absent a defective design." Lally v. Volkswagen Aktiengesellschaft, 45 Mass. App. Ct. 317, 326-330 (1998). According to the Appeals Court in Lally:

> The plaintiff must prove that after the original impact ... the defect or defects in this automobile legally caused or enhanced the injuries which resulted....

Id. (emphasis added). There is no causal connection between the alleged defect to the helmet and many of the injuries suffered by Mr. Taylor, in particular his fractured patella, torn knee ligaments and meniscus damage; these injuries would have occurred regardless of any defect in the helmet.

Despite the contention of the Plaintiffs, the doctrine of *res ipsa loquitur* is inapplicable in this case. To find liability on the basis of *res ipsa loquitur*, there must be an unusual occurrence

or other circumstances from which a jury could reasonably find that the accident is of a kind that would not have happened in the ordinary course of events unless there was negligence by the defendant. See, e.g., Osborne v. Hemingway Transport, Inc., 28 Mass. App. Ct. 944 (1990). "It may generally be said that the principle of *res ipsa loquitur* only applies when the direct cause of the accident, and so much of the surrounding circumstances as was essential to its occurrence, were within the sole control and management of the defendant, or his servants, so that it is not unfair to attribute to the defendant a prima facie responsibility for what happened." 11 MASS. PRAC., Motor Vehicle Law And Practice § 2.11 (2005). Here, there are no such circumstances; in fact, the evidence is such that there is little doubt that the accident would have occurred regardless of whether the helmet was defective. In the present case, the direct cause of the accident and the essential circumstances surrounding the accident were clearly not within the sole control and management of Defendant. As a result, it would be unfair to attribute to Defendant a prima facie responsibility for what happened.

There also several evidentiary questions with respect to the admissibility of certain evidence proffered by Plaintiffs. First, Defendant intends to move *in limine* to have all evidence related to the subsequent recall of the helmets excluded as inadmissible hearsay. The recall in question took place in March of 2002, well after the accident in question. Defendant made the DOT aware of this defect in a March 8, 2002 report after SNELL testing on February 5, 2002. As such, it is a subsequent remedial measure, inadmissible under Fed. R. Evid. 407, which provides, in relevant part that "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or

instruction." Fed. R. Evid. 407. Moreover, evidence of the recall cannot be offered for another purpose, as contemplated by the rule, as there are no issues in the case to which the recall would be relevant, other than those related to the existence of the alleged defect and the need to warn.

Plaintiffs have indicated that they intend to offer certain medical reports in lieu of testimony under M.G.L. c. 233, §79G. Ignoring the question of whether the statute has application in the federal courts, Defendant is willing to consider consenting to admission of the evidence to accommodate the Court. However, Defendant has made unsuccessful requests for the Plaintiffs to produce the doctors for deposition, as is provided by the statute. To the extent that no depositions occur, Defendant will challenge the admissibility of the reports.

## DEFENDANT'S STATEMENT OF ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE MATTER

There was a prior state court lawsuit arising from the same facts and circumstances involved in the present litigation, styled Taylor v. LaBonte, Worcester Superior Court, C.A. No. 02-00368. This prior lawsuit was settled by the parties for the policy limits of Mrs. LaBonte's insurance policy, approximately $100,000. It is Defendant's position that should judgment enter on behalf of the Plaintiffs in the present matter, the settlement amount should be offset.

## DEFENSE WITNESSES

1.    Gil Williams
      NexL Sports Products, Inc
      121 Aviation Way
      Watsonville, CA 95076

Mr. Williams will present testimony with respect to the helmet style worn by the Plaintiff at the time of the accident, including testimony regarding testing of the helmet and compliance with DOT standards.

2.    Lawrence E. Thibeault
      Biomechanics, Inc.
      The Navy Yard
      4601 S. Broad Street, Quarters M-2
      Philadelphia, PA 19112

Mr. Thibeault is being offered as an expert witness for Defendant in this case in the fields

of bioengineering and biomechanics of human injury. Mr. Thibeault received a B.S. from Drexel

University and an M.S. and Sc.D from George Washington University. He worked as a research

engineer for 17 years, including 9 years at the National Institute of Health, Biomedical

Engineering Branch. He taught as a professor of Bioengineering in Neurosurgery at the

University of Pennsylvania from 1980 to 1995, serving as Bioengineering Department Chairman

and Associate Director of the Head Injury Center during that time. He has also taught

biomechanics and neurosurgery at Allegheny University of the Health Sciences and Drexel

University. Mr. Thibeault has several professional affiliations and has authored or co-authored

numerous treatise chapters and articles in his field. Mr. Thibeault also consults with numerous

organizations and companies regarding biomedical engineering issues. Since 2001, Mr.

Thibeault has testified as an expert witness over 20 times.

Mr. Thibeault will testify regarding the relationship between the forces acting on Mr.

Taylor during the accident and the injuries that he suffered, as well as the role of the helmet in

this regard.

3.    Edward Taylor
      118 Seaver Street
      East Taunton, Ma

Mr. Taylor is expected to testify regarding the factual allegations of the Complaint,

including the acquisition of the helmet, the facts and circumstances surrounding his accident, and

the nature and extent of his injuries suffered and damages claimed.

8

4.      Leslie Taylor
        118 Seaver Street
        East Taunton, Ma

        Mrs. Taylor is expected to testify regarding the factual allegations of the Complaint,

including the facts and circumstances of the injuries she claims she suffered as a result of a loss

of consortium.

5.      Kevin Warwick, Shrewsbury, MA Police Officer

        Officer Warwick is expected to testify regarding the police report and his observations of

the accident scene.

6.      Carol LaBonte
        12 Intervale Farm Lane
        Northborough, MA 01532

        Mrs. LaBonte was driving the car involved in the accident and is expected to testify

regarding the facts and circumstances of the accident.

7.      Robert P. Russell
        46 Old Southbridge Road
        Oxford, MA

        Mr. Russell is an eyewitness who is expected to testify regarding the facts and

circumstances of the accident.

        Defendant may call additional witnesses identified by Plaintiffs in the event that they

elect not to call them at trial.

## DEFENSE EXHIBITS

1.      All pleadings, Plaintiffs' Answers to Interrogatories, and Plaintiffs' Responses to

        Requests for Production of Documents.

2.      Deposition transcript of Edward Taylor and all exhibits thereto.

3.      Deposition transcript of Leslie Taylor and all exhibits thereto.

4.      Deposition transcripts of Edward Taylor, Leslie Taylor, Carol LaBonte, Robert Russell and Kevin Warwick in the prior action, and all exhibits thereto.

5.      Deposition transcript of Gil Williams and all exhibits thereto.

6.      All accident reports and police reports related to the subject accident.

7.      Medical records of Plaintiffs.

8.      The helmet involved in the accident, and photographs taken of the helmet following the accident.

9.      All testing data taken prior to the accident for the model of helmet involved in the accident.

10.      Instruction and warranty information for the model of helmet involved in the accident.

11.      Billing records for the purchase of the helmet involved in the accident.

12.      1997 "Feasibility Study of Upgrading FMVSS No. 218, Motorcycle Helmets" performed by the Head Protection Research Laboratory of the University of Southern California on behalf of the DOT.

13.      Treatises and other sources relied upon by the expert witness for Defendant.

14.      To the extent they are not deemed inadmissible by the court pursuant to Defendant's motion *in limine*, all documents related to the 2002 recall of the model of helmet involved in the accident.

Respectfully submitted,
**NEXL SPORTS PRODUCTS a/k/a**
**NEXL HELMET SPORTS,**
By its attorneys,


/s/ William F. Burke
William F. Burke, (BBO #065780)
Edward F. Whitesell, Jr. (BBO #644331)
**ADLER POLLOCK & SHEEHAN P.C.**
175 Federal Street
Boston, MA 02110
(617) 482-0600
Fax: (617) 482-0604

*379692_1.doc*

11